UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DARREN LOVE**, *et al.*, | Civil Action No. 2:07-01045 |
| Plaintiffs, | |
| v. | **OPINION** |
| **KEITH JOHNSON**, *et al.*, | HON. WILLIAM J. MARTINI |
| Defendants. | |

**OPINION**

I.   **INTRODUCTION**

This matter comes before the Court upon Detective Keith Johnson's Motion for Summary Judgment, upon the Federal Defendants' (that is, defendants DEA Agent Cory Handy and Task Force Officer Julian Hilongos') Motion for Summary Judgment, and the State Troopers' (that is, defendants Frank Manghisi, Greg Demeter, and Scott Wikander's) Motion for Summary Judgment seeking dismissal of Plaintiffs' Fourth Amendment claim, the only remaining viable theory of liability in this action, asserting that Plaintiff Margaret Love, now deceased, was unreasonably restricted in her movements by the Defendants when they executed a judicially approved search warrant on November 10, 2004. Defendants seek dismissal of the Fourth Amendment claim on a variety of grounds, including that Love's claim, to the extent she had any claim at all, arises under the Fifth Amendment Due Process Clause (for causes of action brought by pre-trial detainees against federal defendants), under the Eighth Amendment (for denial of medical services), and under the Fourteenth Amendment (for causes of action brought by pre-trial detainees against state defendants, i.e., as a substantive due process claim). Plaintiffs argue that the Fourth Amendment claim is insulated from further review under the law of the case doctrine.

For the reasons elaborated below, the Court will **GRANT in part, and DENY in part** Defendants' motions for summary judgment. Specifically Defendants Handy, Manghisi, Demeter, and Wikander are terminated from this action. All other relief is **DENIED**.

## II.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On November 9, 2004, Defendant Gublin of the Union Country Prosecutor's office obtained a "knock and announce" search warrant at a residence located in Irvington, New Jersey. The warrant was issued in connection with an investigation of the criminal activities of Eric Love, who was arrested and placed into custody on November 10, 2004 around 8:20 p.m. for conspiring to distribute heroin and Oxycontin.

Approximately an hour after Eric Love's arrest, a team of six officers, Defendants Johnson, Hilongos, Manghisi, Demeter, Wikander, and Handy, arrived at the Irvington residence to execute the search warrant. Plaintiffs allege that the police knocked loudly on the door, and when asked who was at the door, identified themselves as police officers and threatened to break down the door if it was not opened. Within five to ten seconds, Wynette Love, a resident and one of the plaintiffs in this suit, went to open the door. Upon turning the doorknob, the door was forced opened by Defendant Hilongos, pushing Wynette Love backwards.

The six officers entered the residence with their guns drawn. There were seven individuals present in the home at the time: Wynette Love, Jahyde Love, Naderia Love, Satasha Love, Margaret Love, Henry Cobb, and Quiyim Robinson. From the entry hallway, it is alleged that Defendant Hilongos could see the decedent, Margaret Love, and Quiyim Robinson in the kitchen. Defendant Hilongos asked Wynette Love whether any other people were present. She responded that her sister, son, and niece were upstairs, and three of the officers rushed upstairs.

Wynette Love then proceeded to engage the remaining three officers in a conversation about their presence in the residence. She was told by the officers that they were from the Union County Prosecutor's office and had a search warrant for the premises. They informed Wynette Love that her brother, Eric Love, was in custody for transporting drugs and that they were searching the house in connection with the arrest. The officers inquired if Eric Love stored any items at the residence, and she responded that they should look in an upstairs closet. A .40 caliber handgun along (with ammunition) was ultimately found among and seized from Eric Love's possessions.

Margaret Love, then sixty-one years old, was a resident of the Irvington home. She suffered from several health problems, including asthma, obesity, and heart disease. She could only walk around with the aid of a walker or by leaning on furniture. Furthermore, she took numerous medications and was additionally treated with a combination of a nebulizer, a portable machine that administers medicine through inhaled vapors, and a stationary oxygen machine.

2

When the officers first entered the residence, Margaret Love was seated at the kitchen table with Quiyim Robinson making party favors. It appears she was wearing an oxygen mask connected to a stationary oxygen machine. Margaret Love's oxygen machine was located on the rear wall of her bedroom and was connected to an oxygen mask by a ten-foot long clear plastic tube. The oxygen machine allowed Margaret Love to walk around the kitchen and her bedroom (a converted dining room). Because of the limited reach of the machine, she could not travel to the living room, bathroom, or entrance hall without disconnecting herself from the machine.

After the officers had gathered the second floor residents to the living room, the officers told everyone else to move to the living room. Wynette Love alleges that she "told [the police] that [her] mother was sick and suffered from chronic asthma," but that the officers "insisted that she move." Margaret Love removed her oxygen mask, and began to move towards the living room. She was not permitted to use her walker. Wynette Love states that Margaret Love, on her way to the living room, sat down in her bedroom to start using her nebulizer with Wynette Love's assistance, because she became breathless and very distressed. Wynette Love alleges that "despite [her] repeated protests, the officers would not permit her to continue on the nebulizer repeating '[w]e need her to come in here,' and 'Ma'am, come in here.'" Therefore, Margaret Love did not receive her usual seven to ten minutes of treatment and only received a few seconds of treatment.

Margaret Love appeared to be in distress when she arrived in the living room, and Wynette Love requested numerous times for the officers to allow Margaret Love to use her nebulizer. Margaret Love's condition continued to deteriorate. About twenty or thirty minutes after Margaret Love had taken off her oxygen mask, the officers permitted two of the residents to get the nebulizer from the bedroom. At some point during this period, it is alleged that the officers would not let Wynette Love's son call 911, and that Quiyim Robinson surreptitiously called 911.

The 911 call recordings indicate that one of the police officers called for an ambulance, and then called twice more to check on the status of the ambulance. Also, the 911 recording notes that sometime after the police officers called for an ambulance, Robinson called for an ambulance and was told that one was already on the way. Robinson communicated with the other occupants in the living room and relayed the 911 call operators' instructions to remain calm. Margaret Love by that point was using her nebulizer and was conscious.

Margaret Love, however, did not improve with the nebulizer. Wynette Love alleges that it was "several minutes" before the ambulance arrived. The paramedics arrived at 10:30 p.m. and began to treat Margaret Love, who lost consciousness and began to seize and vomit after their arrival. She was transported to Newark Beth Israel Medical Center, where she was pronounced dead at 11:03 p.m.

On November 13, 2006, Plaintiffs, the Estate of Margaret Love and her family members, filed a complaint in New Jersey state court. Defendants removed this action to this Court. In a prior opinion on this matter this Court rejected a qualified immunity defense (on the then current record) and allowed Plaintiffs to proceed with a Fourth Amendment claim "to be free from [an] unreasonable search and seizure resulting from Defendants' restrictions of [plaintiffs'] movements ... [including] (1) requiring Margaret Love to disconnect from her oxygen mask and move from the kitchen to the living room; (2) initially refusing to allow a family member to retrieve Margaret Love's nebulizer from her bedroom; and (3) prohibiting the initial phone call to 911." Opinion 6. Moreover, the Court noted "special circumstances" from which, if proven, a jury might conclude that Defendants' conduct was unreasonable, including: "Defendants were aware of Margaret Love's medical condition; (2) Defendants saw that Margaret Love was using her oxygen mask when the officers decided to direct the occupants of the home into the living room; and (3) the occupants of the home were prevented for a time from leaving the living room to retrieve Margaret Love's nebulizer." *Id*. at 7.

Before the Court are three summary judgment motions renewing a qualified immunity defense and renewing the argument that Margaret Love's claim arises, if at all, under the Fifth, Eighth, and Fourteenth Amendment, but not under the Fourth Amendment. Both of these arguments were expressly rejected by this Court's prior letter opinion.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate if the "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp*., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material

4

fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "[merely] show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

## IV.   ANALYSIS

Defendants put forward a variety of defenses. This opinion addresses each in turn.[1]

### A.   Does Plaintiffs' Claim Arise Under the Fourth Amendment?

Defendants argue that Plaintiffs' claim, a *Bivens* claim against the federal defendants and a § 1983 claim against the state (or municipal) defendants, is properly categorized as "one for the denial of medical care and needs" and therefore "analyzed under the Fifth, Eighth, or Fourteenth Amendment," and all such claims have been either abandoned by Plaintiffs or denied by the Court. Here, Plaintiffs have instead pursued their claim under the Fourth Amendment, that is, Margaret Love was unreasonably seized.

---

[1] The Court notes that Plaintiffs' opposition brief (a single response in opposition to each of the three motions for summary judgment) was filed out of time. The Court notes that further late filings by Plaintiffs may result in waiver of claims and/or other sanctions, but as Defendants point to no specific prejudice connected to this late filing, the Court will not reject it. More importantly, full briefing by adverse parties facilitates an informed decision on the merits by the Court.

Defendants' position is purely legal; it was made in an earlier round of briefing; and it was rejected by this Court in its prior opinion.

Moreover, in attempting to resuscitate this argument, Defendants point to no newly disclosed evidence – or, indeed, to any evidence made available by discovery since the earlier opinion. As to new law, Defendants point to *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009) and *Cooper v. City of Hartford*, Civil Action No. 3:07-823, 2009 WL 2163127 (D. Conn. July 21, 2009). *Caiozzo* states: "Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id*. at 72. However, there is no discussion of any Fourth Amendment claim in *Caiozzo*. Thus *Caiozzo*, even if it were Third Circuit authority, would not determine the outcome here. In *Cooper*, Hartford police officers stopped a vehicle in response to reports of a shooting. The driver exited the vehicle and she told the police that the back seat passenger, Carter, had been shot and she, the driver, was trying to bring the passenger to the hospital. The police detained Carter notwithstanding his request to leave to go a hospital. They detained Carter until the arrival of an ambulance that they had called although they subjectively lacked probable cause to suspect Carter of any crime. Carter was taken to the hospital where he died of his wounds. The district court held that the police officers' conduct supported a Fourth Amendment claim for unreasonable seizure. *Cooper*, Civil Action No. 3:07-823, 2009 WL 2163127, at *9, 11-12, 16. In short, *Cooper* does not contradict this Court's prior ruling; rather, it supports it.

Plaintiffs argue that Defendants' are essentially seeking reargument on a matter already determined by the Court, and, therefore, this matter is controlled by the doctrine of the law of the case. It appears that Plaintiffs are correct.

> Lower courts are required to follow the mandate of a higher court after remand on appeal, but when the law of the case doctrine is applied by a court to its own prior decisions, or to the decisions of a coordinate or equal court that has made a prior determination in the case, the doctrine is properly characterized as discretionary in nature. In these contexts, he law of the case doctrine expresses the general rule that courts will not reopen issues that have already been decided. It is not a limit on a court's power to revisit an issue if the court feels such review is necessary. The Supreme Court has held that although a court has the power to revisit its own decisions or those of a coordinate court, it should not do so absent extraordinary circumstances showing that the prior decision was clearly wrong and would work a manifest injustice.

18 DANIEL R. COQUILLETTE ET AL., MOORE'S FEDERAL PRACTICE § 134.21[1], at 134-54 (3d ed. 2010) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816-817 (1988)); *see also Jakimas*, 485 F.3d at 776 n.9 (applying law of the case doctrine to district court proceedings).

Generally, law of the case will only be put aside in "exceptional circumstances," including: where new evidence is developed or for intervening changes in law or where the original decision was clearly erroneous. *See In re City of Philadelphia Litig.*, 158 F.3d 711, 720 (3d Cir. 1998). Defendants fail to establish that this Court's prior decision was "clearly" wrong, nor have Defendants pointed to any intervening change in statutory law or case law. If anything, the *Cooper* decision supports this Court's prior decision. Nor do Defendants argue that this Court's prior decision works an injustice. Finally, the Court again notes that Defendants' argument is entirely legal; it points to *no* new evidence. *Id.*; *see also* Fed. R. Civ. P. 60(b).

For the reasons elaborated above, the Court does not exercise its discretion to revisit its prior holding in regard to Plaintiffs' action arising under the Fourth Amendment.

### B. Was the Seizure Reasonable?

Alternatively, Defendants argue that their use of force was a "reasonable" seizure here, and therefore, Plaintiffs have no cognizable Fourth Amendment claim. Specifically, Defendants argue that because they acted on a valid warrant (which is not contested), they had a "categorical" right to detain Margaret Love. *Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure."). However, authorization is limited "to [the] use [of] reasonable force to effectuate the detention." *Id.* at 98-99. Defendants point to a number of facts suggesting that their use of force was reasonable. For example, police officers' moving occupants of a house subject to search to a common room is standard practice; they did not use handcuffs; and the detention of Margaret Love – that is the time before the Defendants recognized that her condition had turned acute – was, apparently, some fifteen to twenty minutes. A relatively short period of time.

In its prior opinion, this Court balanced the "incremental intrusion on personal liberty" against the officers interests in "preventing flight," "minimizing the risk of harm to the officers," and facilitating "the orderly completion of the search." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981). The Court noted that there was evidence suggesting that there was little flight risk as Eric Love, the suspect, was already in custody, that other evidence indicated that the risk of harm to the officers was modest as the detained occupants were, apparently, cooperative, and, finally, there were varying

accounts indicating that the Defendants were aware of Margaret Love's medical condition. Since issuing its prior opinion, additional evidence obtained through discovery would seem to buttress these views. *See* Hilongos Dep. 35:4-17 (indicating that Defendant was aware of Margaret Love's "medical problems"). It follows that the reasonableness of Defendants' conduct is disputed, notwithstanding Plaintiffs' "categorical" authority to detain Margaret Love. Because the "reasonableness" of a seizure depends "on *how* it is carried out," *Graham v. Connor*, 490 U.S. 386, 395 (1989), the Court will deny granting Defendants summary judgment on the Fourth Amendment claim.

### C.  Qualified Immunity

In its prior opinion, this Court addressed Defendants' assertion of qualified immunity. The Court denied granting relief on that basis. Again, law of the case would seem to apply unless the prior decision was clearly wrong or there have been legal developments since the prior holding or new evidence has been uncovered by discovery.

Plaintiffs' briefs point to no developments in statutory or case law. *But cf. Pearson v. Callahan*, 129 S. Ct. 808 (2009); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). As to new evidence, the Federal Defendants' opening brief[2] cites no evidence at all in the section on qualified immunity (that is, none relevant to the qualified immunity defense). As to clear error, Defendants argue that when they entered the house they did not know that Margaret Love was ill and that when her condition turned acute – a short time after she moved to the living room – the Defendants called for an ambulance. In other words, "[r]easonable officers in defendants' position would not have clearly understood that they were violating decedent Margaret Love's [Fourth Amendment] rights." Defendants would limit the analysis to what the officers knew when they entered the house. That analysis is cramped. What also matters is what they knew (or should have know) after actually encountering Margaret Love and prior to directing or ordering her (assuming that they did so) to move away from her oxygen mask and nebulizer. Those facts remain disputed and no new undisputed facts have been put forward to upset the Court's prior holding. For the reasons elaborated above, the Court does not exercise its discretion to revisit its prior holding in regard to qualified immunity.

### D.  Personal Responsibility

---

[2] In the Federal Defendants' Reply brief, they argue that: "[Detective Johnson] did not believe that the request would harm Margaret Love in any way. Margaret Love obviously did not 'live' in the kitchen [where the police found her] and did move about the house. When he asked her to move into the living room, she did not object. Moreover, Henry Cobb testified that he asked Margaret if she could move and she stated that she could." These arguments did not appear in the opening brief and they come absent citations to the record.

8

Agent Corey Handy asserts that he was not "personally involved in the request for Margaret Love to move from the kitchen to the living room, or in any denial of medical care." Absent a claim of personal involvement, a civil rights claim under Section 1983 or under *Bivens* fails. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiffs' brief appears to make no specific response to this argument. Failure to respond constitutes abandonment or waiver of the claim against Handy. Defendants Manghisi, Demeter, and Wikander make a similar argument. Again, Plaintiffs have failed to respond. Therefore, these Defendants will be terminated from this action.

Detective Johnson argues that the complaint makes no specific allegations against him and, as such, he should be dismissed. Johnson does not dispute that he was the person who "asked Margaret Love to move into the living room." Although Johnson might characterize his action as a mere request, as explained above, other evidence disputes this characterization and suggests that Johnson and the remaining officers effectuated a seizure. Therefore, Johnson will not be terminated from this action.

## V.   CONCLUSIONS

For the reasons elaborated above, the Court **GRANTS in part, and DENIES in part** Defendants' motions for summary judgment.

Specifically Defendants Handy, Manghisi, Demeter, and Wikander are terminated from this action. All other relief is **DENIED**.

An appropriate order follows.


                                                                    s/ William J. Martini
**DATE: May 27, 2010**                                              **William J. Martini, U.S.D.J.**